UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TONYA HUTCHINGS
o.b.o. T.K.H.,

       Plaintiff,                                     Hon. Robert J. Jonker

v.                                                    Case No. 1:16-cv-1459

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim that her son is entitled to Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social

˘1˘

security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff's son (T.K.H.) was born on December 6, 2002. (PageID.188). On June 5, 2013, Plaintiff submitted an application for disability benefits, asserting that her son has been disabled since January 1, 2010, due to ADHD, learning disabilities, and depression. (PageID.188-91, 205). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (PageID.96-186). On August 11, 2015, ALJ Romona Scales conducted an administrative hearing at which Plaintiff and T.K.H. testified. (PageID.67-94). In a written decision dated December 29, 2015, the ALJ determined that T.K.H. was not disabled. (PageID.48-62). The Appeals Council declined to review this determination, rendering it the Commissioner's final decision in the matter. (PageID.38-40). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g).

## RELEVANT EVIDENCE

Treatment notes dated May 10, 2011, indicate that T.K.H.'s symptoms are "somewhat improved" with medication. (PageID.431). On June 13, 2011, Plaintiff reported that T.K.H.'s medications were "working better." (PageID.429). On July 8, 2011, T.K.H. reported that his medications "help him to focus on things." (PageID.427). Treatment notes dated November 9, 2011, indicate that T.K.H. was doing well on his current medication regimen. (PageID.490-91).

On December 8, 2011, T.K.H. participated in a consultive psychological examination. (PageID.274-79). The results of a mental status examination were unremarkable.

(PageID.277-78).  T.K.H. was diagnosed with ADHD and his GAF score was rated as 60.[1]

(PageID.279).  The examiner concluded:

> The patient is a nine year old boy.  He has a diagnosis of Attention-Deficit/Hyperactivity Disorder for which he is being successfully treated with prescription medication.  He continues to perform below grade level in reading and writing, but he interacts appropriately with school authorities and peers.  He does not have any difficulty moving about, manipulating objects, or performing age-appropriate self care tasks.

(PageID.279).

Treatment notes dated February 6, 2012, indicate that T.K.H. exhibited "normal mood and affect" and "his mood appears not anxious."  (PageID.501).  It was further noted that T.K.H."does not express impulsivity" and "does not exhibit a depressed mood."  (PageID.501).  Treatment notes dated March 5, 2012, indicate that "school has been going well" for T.K.H. and his "mom feels he is doing ok."  (PageID.510).  Treatment notes dated April 9, 2012, indicate that T.K.H. "is attentive" and "does not exhibit a depressed mood."  (PageID.521).  The doctor also noted that T.K.H. was "not anxious. . .not angry. . .not hyperactive. . .[and] does not express impulsivity."  (PageID.521).  Treatment notes dated May 25, 2012, indicate that "things are going ok at school" for T.K.H.  (PageID.313).

Treatment notes dated June 12, 2012, indicate that T.K.H. was "doing well" with no evidence of behavioral problems.  (PageID.544).  Treatment notes dated August 17, 2012, indicate that T.K.H. was "doing well."  (PageID.566).  Treatment notes dated September 17,

---

[1] **Error! Main Document Only.**The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning.  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV).  A GAF score of 60 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning."  DSM-IV at 34.

2012, indicate that T.K.H. was "doing well at school as far as behavior." (PageID.576). Treatment notes dated January 15, 2013, indicate that T.K.H. was doing "much better" on a modified medication regimen. (PageID.297). Treatment notes dated May 21, 2013, indicate that T.K.H. "is continuing to do well." (PageID.291).

On August 19, 2013, T.K.H. participated in a consultive psychological examination. (PageID.317-24). T.K.H.'s parents reported that T.K.H. is "not a behavior problem at school except for doin' his work. As far as gettin' along with the other kids he does okay." (PageID.319). T.K.H. "argued with his parents from time to time throughout the interview," but "interacted appropriately with [the examiner] throughout the evaluation." (PageID.320). The results of a mental status examination were unremarkable and the results of intelligence testing revealed that T.K.H. possessed a full-scale IQ of 82 which placed him in the "dull normal range." (PageID.320-23).

On October 14, 2013, T.K.H. reported that "things are going well at school" and "he is less angry than he used to be." (PageID.649). On November 4, 2013, T.K.H. reported that "he is doing well on his meds, [with a] big improvement in behavior at home" following a recent modification to his medication regimen. (PageID.659). Treatment notes dated March 19, 2014, indicate that "school is going great" for T.K.H. and that he "got great reviews in conferences." (PageID.671).

Treatment notes dated August 27, 2014, indicate that T.K.H. was doing well. (PageID.701). Treatment notes dated November 14, 2014, indicate that T.K.H. is "doing ok in school, paying attention and doing his work." (PageID.721). Treatment notes dated December 15, 2014, indicate that T.K.H.'s "attention and focus has been good." (PageID.732). Treatment

notes dated January 14, 2015, indicate that school "seems to be going fine" for T.K.H. (PageID.742). Treatment notes dated April 10, 2015, indicate that T.K.H. is doing "very well on current medication" and "school is going well." (PageID.754). T.K.H. reported that "he is 95% better than where he used to be." (PageID.754).

On September 29, 2015, Sherry Lockwood, T.K.H.'s then current teacher, completed a questionnaire concerning T.K.H.'s abilities in six domains of functioning. (PageID.252-59). With respect to the domain of attending and completing tasks, Lockwood assessed T.K.H.'s functioning in thirteen areas. (PageID.254). Lockwood characterized T.K.H.'s functioning as "a slight problem" in three areas, but "no problem" in the remaining ten areas. (PageID.254). In the domain of interacting and relating with others, Lockwood evaluated T.K.H. in thirteen areas. (PageID.255). Lockwood characterized T.K.H.'s functioning as "a slight problem" in two areas, but "no problem" in ten areas. (PageID.255). Lockwood did not assess T.K.H. in the area of "expressing anger appropriately," but noted that she had "not seen any anger." (PageID.255).

With respect to the domains of (1) moving about and manipulating objects and (2) caring for himself, Lockwood reported that T.K.H. exhibited "no problems." (PageID.256-57). Regarding T.K.H.'s health and physical well-being, Lockwood reported that she was unaware of any difficulties in this regard. (PageID.258). With respect to the domain of acquiring and using information, Lockwood assessed T.K.H.'s functioning in ten separate areas. (PageID.253). Lockwood concluded that T.K.H. experienced "no problem" in two areas and "a slight problem" in the remaining eight areas. (PageID.253). Howell noted that T.K.H., then in the seventh grade, was presently reading at a sixth grade level. (PageID.252). Specifically, Howell reported that

"[T.K.H.'s] fluency is below grade level but [his] comprehension is not."  (PageID.252).

On November 4, 2015, Jennifer Howell completed a similar questionnaire. (PageID.264-71).  Howell noted that she was not presently working with T.K.H., but instead taught him the previous school year when T.K.H. was in the sixth grade.  (PageID.264).  With respect to the domain of attending and completing tasks, Howell characterized T.K.H.'s functioning as "an obvious problem" in two areas, "a slight problem" in five areas, and "no problem" in six areas.  (PageID.266).  In the domain of interacting and relating with others, Howell characterized T.K.H.'s functioning as "a slight problem" in four areas, but "no problem" in nine areas.  (PageID.267).

With respect to the domain of moving about and manipulating objects, Howell characterized T.K.H.'s functioning as "a slight problem" in one area and "no problem" in the remaining six areas.  (PageID.268).  In the domain on caring for himself, Howell described T.K.H.'s functioning as "an obvious problem" in one area, but "no problem" in the remaining nine areas. (PageID.269).  Regarding T.K.H.'s health and physical well-being, Howell observed that T.K.H.'s fine motor skills were "extremely weak."  (PageID.270).  With respect to the domain of acquiring and using information, Howell reported that T.K.H. experienced "a very serious problem" in one area, "a serious problem" in two areas, "an obvious problem" in two areas, "a slight problem" in four areas, and "no problem" in one area.  (PageID.265).

## ANALYSIS OF THE ALJ'S DECISION

Federal law provides that an "individual under the age of 18" will be considered disabled if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). To determine whether a child satisfies this standard, the Commissioner must evaluate the claim pursuant to a three-step sequential process. 20 C.F.R. § 416.924.

In the first step, if the ALJ determines that the child is engaged in substantial gainful activity she cannot be found to be disabled. 20 C.F.R. § 416.924(b); *Elam v. Commissioner of Social Security*, 348 F.3d 124, 125 (6th Cir. 2003). If the child is not engaged in substantial gainful activity the analysis proceeds to step two, at which point the ALJ must determine whether the child has a severe impairment or combination of impairments. 20 C.F.R. § 416.924(c); *Elam*, 348 F.3d at 125. If the ALJ determines that the child suffers from a severe impairment, or combination of impairments, the analysis proceeds to step three, at which point the ALJ must determine whether the impairment(s) "meet, medically equal, or functionally equal" one of the impairments identified in the Listing of Impairments. 20 C.F.R. § 416.924(d); *Elam*, 348 F.3d at 125.

After noting that T.K.H. was not engaged in substantial gainful activity, the ALJ proceeded to the second step of the analysis, finding that T.K.H. suffered from the following severe impairments: (1) ADHD; (2) oppositional defiant disorder; (3) learning problems; and (4) asthma. (PageID.51). At the third step of the analysis, the ALJ concluded that T.K.H.'s impairments do not, individually or in combination, meet or medically equal any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.51). The ALJ further determined that T.K.H.'s impairments do not functionally equal in severity any impairment identified in the Listing of Impairments. (PageID.51-62).

To determine whether a child claimant suffers from an impairment which is the functional equivalent of a listed impairment, the ALJ must evaluate how the child functions in each of six domains of functioning described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(a)-(b). To be considered disabled the child's impairments must result in "marked" limitations[2] in two domains of functioning or an "extreme" limitation[3] in one domain. 20 C.F.R. § 416.926a(a). The six domains of functioning are:

  (i)  acquiring and using information,

  (ii)  attending and completing tasks,

  (iii)  interacting and relating with others,

  (iv)  moving about and manipulating objects,

  (v)  caring for yourself, and

  (vi)  health and physical well-being.

20 C.F.R. § 416.926a(b)(1).

The ALJ found that T.K.H. experienced no limitation in the domains of caring for yourself and health and physical well-being and less than marked limitation in the four remaining domains. (PageID.56-62). Accordingly, the ALJ determined that T.K.H. was not disabled as defined by the Social Security Act.

  A.  Acquiring and Using Information

---

[2] A "marked" limitation is defined as one which "interferes seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2).

[3] An "extreme" limitation is defined as one which "interferes very seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3).

Plaintiff has not identified any specific error in the ALJ's decision, but instead argues that the ALJ failed to properly weigh two items of evidence: (1) a February 3, 2015 notation that T.K.H., then in the sixth grade, "reads 59 words per minute at the 5th grade level" and (2) the questionnaire completed by Jennifer Howell suggesting that T.K.H. experienced significant difficulties in the domain of acquiring and using information. (PageID.240, 264-71). While not expressly stated as such, the Court, because it is not permitted to re-weigh the evidence, interprets Plaintiff's argument as challenging the ALJ's determination that T.K.H. experiences less than marked limitations in the domain of acquiring and using information.

As noted above, Sherry Lockwood and Jennifer Howell both completed questionnaires regarding T.K.H.'s performance in various domains of functioning. While the teacher's opinions were similar in most respects, their opinions differed significantly with respect to T.K.H.'s performance in the domain of acquiring and using information. The ALJ considered both questionnaires and directly addressed the inconsistencies in such. Specifically, the ALJ concluded as follows:

> The above teacher opinions are given some weight. The undersigned acknowledges the inconsistency between the two opinions, but also acknowledges the length of each teacher's relationship with the claimant. The claimant was tested and placed in special education classes for reading. However, it appears he is not significantly behind his peers. For instance, in the 6th grade, he was reading at the 5th grade level. He is generally passing his classes. He is diagnosed with ADHD and a mild mood disorder, but this appears to be adequately controlled with medications. The claimant's concentration and attention were documented as very poor during one consultive examination, but there are also times when he is noted to be attentive and not hyperactive. During another consultive examination, he was diagnosed with oppositional deviant disorder, but his treating doctor diagnosed him with only a mild mood disorder. He has had no problems with the law, there is

>no evidence of suspensions or expulsions from school, he has not gotten into fights with his peers at school and there is no indication he is unable to respect authority. He does seem to have some issues obeying his parents and getting along with his sisters. However, he was never psychiatrically hospitalized nor does he receive regular mental health therapy.

(PageID.56).

The evidence detailed above reveals that T.K.H. emotional impairments are well controlled with medication and that he attends school without difficulty. Of the two questionnaires at issue, the one completed by Sherry Lockwood is consistent with the other evidence of record. As the ALJ recognized, while T.K.H.'s reading skills are deficient, "he is not significantly behind his peers." Moreover, as Sherry Lockwood noted, while T.K.H. may read a bit slowly, he does not experience any deficiencies in comprehension. In sum, the ALJ's conclusion that T.K.H. experiences a less than marked limitation in the domain of acquiring and using information is supported by substantial evidence.

B.   Closed Period of Disability

Finally, Plaintiff argues that the ALJ should have, at least, found T.K.H. disabled for a closed period of time, "from the mid-2013 filing date through at least the end of 2104." As the discussion above makes clear, the evidence does not support the argument that during the relevant time period T.K.H. experienced an impairment or combination of impairments which resulted in marked and severe functional limitations which lasted for a continuous period of not less than 12 months. Accordingly, this argument is rejected.

## **CONCLUSION**

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Dated: February 6, 2018             /s/ Ellen S. Carmody
ELLEN S. CARMODY
U.S. Magistrate Judge